(Slip Opinion)

# The Department of Defense's Authority to Conduct Background Investigations for Its Personnel

Section 925 of the National Defense Authorization Act for Fiscal Year 2018 authorizes the Department of Defense to conduct the background investigations for its personnel currently performed by the National Background Investigations Bureau of the Office of Personnel Management, including investigations to determine whether those personnel may be granted security clearances giving them access to classified information or whether they are eligible to hold sensitive positions.

This statutory reallocation of investigative authority from one part of the Executive Branch to another does not raise constitutional concerns. It does not infringe upon the President's constitutional role in protecting national security information.

February 7, 2018

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF PERSONNEL MANAGEMENT

You have asked whether the Department of Defense ("DoD") has the authority to conduct the background investigations for its personnel currently performed by the National Background Investigations Bureau ("NBIB"), an entity within the Office of Personnel Management ("OPM"). Those background investigations include investigations to determine whether DoD personnel may be granted a security clearance giving them access to classified information or whether they are eligible to hold a sensitive position.[1] You indicated that, in your view, a statutory amendment or new executive order would be necessary for DoD to assume these functions. *See* OPM Opinion Request at 9–10.[2]

---

[1] *See* Letter for Curtis E. Gannon, Acting Assistant Attorney General, Office of Legal Counsel, from Theodore M. Cooperstein, General Counsel, Office of Personnel Management at 1–2, 9–10 (Oct. 4, 2017) ("OPM Opinion Request"); *see also* Letter for Curtis E. Gannon, Acting Assistant Attorney General, Office of Legal Counsel, from Theodore M. Cooperstein, General Counsel, Office of Personnel Management (Oct. 12, 2017) ("OPM Opinion Request Supplement").

[2] We also received views from DoD and the Office of the Director of National Intelligence ("ODNI"). *See* Letter for Curtis E. Gannon, Acting Assistant Attorney General, Office of Legal Counsel, from William S. Castle, Acting General Counsel, Department of Defense (Nov. 9, 2017) ("DoD Views Letter"); E-mail for Henry C. Whitaker, Office of Legal Counsel, from Spencer R. Fisher, National Counterintelligence and Security Center, ODNI, *Re: OPM OLC opinion request* (Nov. 3, 2017 1:28 PM) ("ODNI Views E-

After you requested this opinion, the President signed into law the National Defense Authorization Act for Fiscal Year 2018 ("FY 2018 NDAA"), Pub. L. No. 115-91, 131 Stat. 1283 (2017). Section 925 of the NDAA provides that "[t]he Secretary of Defense has the authority to conduct security, suitability, and credentialing background investigations for Department of Defense personnel," *id.* § 925(a)(1), 131 Stat. at 1526, and explains how DoD should exercise that authority, *id.* § 925(a)(2), (b), 131 Stat at 1526–27. We conclude that section 925 unambiguously authorizes DoD to conduct the investigations at issue and that this authorization is constitutional. We thus need not consider whether DoD possessed this authority under previous statutes or executive orders.

## I.

Before 2003, DoD performed certain background investigations for its own personnel. *See* OPM Opinion Request Supplement at 1; OPM Opinion Request at 4 n.8. Pursuant to a delegation of authority from OPM, those investigations included applicants for, and employees in, competitive service positions within DoD. *Id*. In 2003, the National Defense Authorization Act for FY 2004 ("FY 2004 NDAA") authorized DoD to transfer those investigative functions to OPM so long as certain conditions were met, including that DoD and OPM agreed to the transfer. Pub. L. No. 108-136, § 906(a), 117 Stat. 1392, 1561 (2003). In October 2004, OPM and DoD agreed to the transfer, and OPM assumed control over these functions by February 2005. *See* DoD Views Letter at 3–4 & att. 2.

In December 2004, Congress passed the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), Pub. L. No. 108-458, 118 Stat. 3638. Section 3001 of that law, which has been codified at 50 U.S.C. § 3341 and is referred to subsequently as section 3341, instructed the

---

mail"). In addition, we received further submissions from OPM, DoD, and ODNI regarding the effect of section 925 of the National Defense Authorization Act for Fiscal Year 2018. *See* E-mail for Henry C. Whitaker, Office of Legal Counsel, from Robert J. Girouard, Office of Personnel Management, *Re: OPM opinion request* (Oct. 18, 2017 1:08 PM) ("OPM Supplemental Views E-mail"); E-mail for Henry C. Whitaker, Office of Legal Counsel, from Spencer R. Fisher, National Counterintelligence and Security Center, ODNI, *Re: OPM OLC opinion request* (Dec. 1, 2017 5:31 PM); Letter for Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, from William S. Castle, Acting General Counsel, Department of Defense (Dec. 7, 2017).

President to select a single executive branch agency to oversee security clearance investigations and adjudications and to set uniform policies in this area throughout the United States Government. *See id.* § 3001(b)(1)–(2), (4), 118 Stat. at 3705–10 (codified at 50 U.S.C. § 3341(b)(1)–(2), (4)). That section further required that, "[n]otwithstanding any other provision of law," the President, in consultation with the designated oversight agency, would select "a single agency . . . to conduct, to the maximum extent practicable, security clearance investigations of employees and contractor personnel of the United States Government who require access to classified information and to provide and maintain all security clearances of such employees and contractor personnel." *Id.* § 3001(c)(1), 118 Stat. at 3707 (codified at 50 U.S.C. § 3341(c)(1)). Section 3341 also authorized the oversight agency to designate "other agencies to conduct such investigations" if "appropriate for national security and efficiency purposes." *Id.*

At present, those provisions of section 3341 have been implemented in Executive Orders that charge the Director of National Intelligence with oversight of security clearance investigations and adjudications. *See* Exec. Order No. 13764, § 3(s), 82 Fed. Reg. 8115, 8123 (Jan. 17, 2017) (amending Exec. Order No. 13467, § 2.5(e), 3 C.F.R. 196 (2008)). In those Orders, the President has also charged OPM with overseeing suitability investigations and determinations. *See id.* §§ 1(a)(iii), 3(s) (amending Civil Service Rule II, 5 C.F.R. §§ 2.1(a), and Exec. Order No. 13467, § 2.5(b)). He has further specified that the NBIB, an entity within OPM, shall "serve as the primary executive branch service provider for background investigations" for security clearances and related adjudications as well as for suitability determinations. *Id.* § 3(t) (amending Exec. Order No. 13467, § 2.6(a)(1)); *see also id.* § 1(b)(i) (amending Civil Service Rule V, 5 C.F.R. § 5.2(a)). But the Director of National Intelligence retains the ultimate authority "to designate an agency or agencies, to the extent that it is not practicable to use the [NBIB], to conduct investigations of persons who are proposed for access to classified information or for eligibility to hold a sensitive position." *Id.* § 3(s) (amending Exec. Order No. 13467, § 2.5(e)(vi)).[3] At the time of your opinion request, the

---

[3] The President originally designated the Office of Management and Budget as the agency responsible for overseeing security clearance investigations and adjudications. *See*

Director of National Intelligence had not indicated that it would be impracticable for the NBIB to conduct security clearance investigations for DoD personnel, nor had the Director designated DoD to conduct those investigations. *See* ODNI Views E-mail.

On December 12, 2017, Congress enacted the FY 2018 NDAA, which included a new provision, section 925, concerning DoD personnel background and security investigations. Section 925(a) of that law provides in relevant part:

> (a) TRANSITION TO DISCHARGE BY DEFENSE SECURITY SERVICE [("DSS")].—
>
> (1) SECRETARIAL AUTHORITY.—The Secretary of Defense has the authority to conduct security, suitability, and credentialing background investigations for Department of Defense personnel. In carrying out such authority, the Secretary may use such authority, or may delegate such authority to another entity.
>
> (2) PHASED TRANSITION.—As part of providing for the conduct of background investigations initiated by the Department of Defense through the Defense Security Service by not later than the deadline specified in subsection (b), the Secretary shall, in consultation with the Director of the Office of Personnel Management, provide for a phased transition from the conduct of such investigations by the National Background Investigations Bureau of the Office of Personnel Management to the conduct of such investigations by the Defense Security Service by that deadline.

*Id.* § 925(a), 131 Stat. at 1526.

Section 925(b), in turn, provides:

---

Exec. Order No. 13381, § 2, 3 C.F.R. 167, 167–68 (2005). In 2008, however, the President transferred most of those oversight functions to the Director of National Intelligence. *See* Exec. Order No. 13467, § 2.3(c). Executive Order 13467 also specified that the Director of OPM would oversee investigations and adjudications relating to determinations of suitability and eligibility for logical and physical access. *Id.* § 2.3(b). As noted above, the Director of OPM continues to serve in this role. And the President since 2005 has designated OPM as the lead entity responsible for conducting investigations for security clearances and related determinations. *See* OPM Opinion Request at 6 & n.15; *see also* Exec. Order No. 13467, § 3(g). OPM has also been granted responsibility for performing suitability investigations for decades. *See* OPM Opinion Request at 3, 8.

> (b) COMMENCEMENT OF IMPLEMENTATION PLAN FOR ONGOING DISCHARGE OF INVESTIGATIONS THROUGH DSS.—Not later than October 1, 2020, the Secretary of Defense shall commence carrying out the implementation plan developed pursuant to section 951(a)(1) of the National Defense Authorization Act for Fiscal Year 2017[.]

*Id.* § 925(b), 131 Stat. at 1527.[4]

Section 925(d) then states:

> (d) TRANSFER OF CERTAIN FUNCTIONS IN OPM TO DSS.—
>
> (1) IN GENERAL.—For purposes of meeting the requirements in subsections (a) and (b), the Secretary of Defense shall provide for the transfer of the functions described in paragraph (2), and any associated personnel and resources, to the Department of Defense.
>
> (2) FUNCTIONS.—The functions to be transferred pursuant to paragraph (1) are the following:
>
> (A) Any personnel security investigations functions transferred by the Secretary to the Director of the Office of Personnel Management pursuant to section 906 of the [FY 2004 NDAA].
>
> (B) Any other functions of the Office of Personnel Management in connection with background investigations initiated by the Department of Defense that the Secretary and the Director jointly consider appropriate.

*Id.* § 925(d), 131 Stat. at 1527.

---

[4] In the National Defense Authorization Act for Fiscal Year 2017 ("FY 2017 NDAA"), Pub. L. No. 114-328, 130 Stat. 1999 (2016), Congress had directed DoD to develop and submit an implementation plan for DoD to conduct background investigations for specified DoD personnel. *Id.* § 951(a)(1), 130 Stat. at 2371. The FY 2017 NDAA further directed DoD and OPM jointly to develop a plan to transfer personnel and resources in proportion to the workload that DoD would assume were this plan implemented. *Id.* § 951(a)(2), 130 Stat. at 2371. In August 2017, before section 925's enactment, DoD submitted to Congress a three-phase, three-year plan whereby DoD would ultimately assume responsibility for conducting all background investigations for DoD-affiliated personnel. *See* Department of Defense Response to the National Defense Authorization Act for Fiscal Year 2017 Section 951: Implementation Plan for Potential Transfer of Background Investigation Responsibility to the Department of Defense ("DoD Implementation Plan").

## II.

The enactment of section 925 of the FY 2018 NDAA resolves the question that you have asked. No matter whether DoD previously had authority to conduct background investigations for DoD personnel, DoD has that authority now. By its terms, section 925 authorizes DoD to "conduct security, suitability, and credentialing background investigations for Department of Defense personnel." FY 2018 NDAA, § 925(a)(1), 131 Stat. at 1526. Section 925 also states: "Any personnel security investigations functions transferred by the Secretary [of Defense] to the Director of the Office of Personnel Management pursuant to section 906 of" the FY 2004 NDAA shall "be transferred" back to DoD. *Id.* § 925(d)(2), 131 Stat. at 1527. Indeed, section 925 not only authorizes, but requires DoD to conduct investigations for DoD personnel. DoD, in consultation with OPM, "shall provide for a phased transition from the conduct of such investigations by the [NBIB] to the conduct of such investigations by [DSS]." *Id.* § 925(a)(2), 131 Stat. at 1526. And DoD must begin executing those functions by 2020 by following the implementation plan that DoD developed pursuant to the FY 2017 NDAA. *Id.* § 925(b), 131 Stat. at 1527; *see supra* note 4.

OPM, however, contends that section 925 "poses significant interpretive difficulties" because it conflicts with, but does not expressly repeal, various statutory provisions that OPM reads as authorizing only OPM to conduct investigations. OPM Opinion Request at 9 n.22; *see also* OPM Supplemental Views E-mail. In particular, OPM sees a conflict between section 925 and IRTPA, under which the President, "[n]otwithstanding any other provision of law," must "select a single agency of the executive branch to conduct, to the maximum extent practicable, security clearance investigations of employees and contractor personnel" across the government. 50 U.S.C. § 3341(c)(1). Because the President designated OPM as this "single agency," OPM suggests, section 925's assignment to DoD of responsibility for conducting security clearance investigations for DoD employees cannot be reconciled with this provision. *See* OPM Opinion Request at 9 n.22; *see also* ODNI Views E-mail (expressing a similar concern).

We disagree. As its heading indicates, section 925(d) requires the "transfer of certain functions in OPM to DSS," namely those involving

personnel security investigations. FY 2018 NDAA, § 925(d), 131 Stat. at 1527 (capitalization modified). Section 925(a) similarly provides for the phased transition from the NBIB (within OPM) to DSS of functions that include the conduct of security clearance investigations. *See id.* § 925(a)(2), 131 Stat. at 1526. Although the statute does not expressly modify the "single agency" directive of section 3341, we could not give effect to section 925 without concluding that it creates an exception to the prior rule. "[N]ormally the specific governs the general." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007). That "canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission," so that, "[t]o eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *see also GAO Access to Trade Secret Information*, 12 Op. O.L.C. 181, 182–83 (1988) ("It is a cardinal axiom of statutory construction that 'where there is no clear congressional intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.'" (brackets omitted) (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974))). That principle applies in determining in particular how a later-enacted statute should be harmonized with an earlier one. *See, e.g.*, *United States v. Estate of Romani*, 523 U.S. 517, 530–31 (1998) (concluding that the more specific provisions of the later-enacted Tax Lien Act should be given effect over the federal priority statute, even though the Tax Lien Act did not expressly amend the earlier statute). Here, section 925 is the more specific provision: its sole concern is with allocating responsibility for background investigations of DoD personnel. By contrast, section 3341 describes how responsibility for security clearance investigations should be allocated government-wide.

Nor do we see anything in the statutory text that would displace this presumption. While section 3341 applies "[n]otwithstanding any other provision of law," that phrase does not preclude a later Congress from effectively enacting a specific exception to the general rule of single-agency administration of security clearance investigations. *See Dorsey v. United States*, 567 U.S. 260, 274 (2012) ("[S]tatutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to

modify the earlier statute, or to apply the earlier statute but as modified. And Congress remains free to express any such intention either expressly or by implication as it chooses." (citations omitted)); *see also Lockhart v. United States*, 546 U.S. 142, 147–48 (2005) (Scalia, J., concurring) (similar). Thus, "the general language" of section 3341, "although broad enough to include it, will not be held to apply to a matter specifically dealt with" in section 925. *RadLAX*, 566 U.S. at 646 (internal quotation marks omitted).

For the same reasons, we disagree with the suggestion that our reading of section 925 would pose "significant interpretive difficulties" with respect to other statutory provisions. *See* OPM Opinion Request at 9 n.22. Section 925 can be read alongside 5 U.S.C. § 3301, which grants the President broad authority to regulate the civil service, including the authority to select individuals to conduct investigations to determine the fitness of applicants. *See id.* § 3301(3). We think that section 925's more specific provision controls, and that DoD has the authority to conduct specified investigations for its own personnel. We also see no conflict between section 925 and 5 U.S.C. § 11001, which cross-references 50 U.S.C. § 3341 and simply confers authority on the Director of National Intelligence over certain security reinvestigations without independently specifying which entity must perform those reinvestigations.

OPM also has identified a "marked contrast" between section 925 and section 906 of the FY 2004 NDAA, which OPM interpreted as providing for a transfer of investigative authority from DoD to OPM that, once made, was irreversible except through subsequently enacted legislation. *See* OPM Opinion Request at 9 & n.22. OPM subsequently clarified that it does not see a direct conflict between these provisions. We do not in any event think that section 906 creates any interpretive difficulties with respect to section 925. Even if OPM's reading of section 906 were correct, section 925(d)(2) expressly reverses any transfer of investigative functions effected by the earlier provision. *See* FY 2018 NDAA, § 925(d)(2), 131 Stat. at 1527 (providing that "[a]ny personnel security investigations functions transferred by the Secretary [of Defense] to the Director of the Office of Personnel Management pursuant to section 906 of " the FY 2004 NDAA must "be transferred" back to DoD). Therefore, section 925 "specifically addresses language on the statute books that

[Congress] wishes to change" and supersedes section 906. *United States v. Fausto*, 484 U.S. 439, 453 (1988).

Finally, we disagree with OPM's suggestion that this reading of section 925 might raise constitutional concerns. OPM indicates that if Congress assigned to DoD the authority to conduct security clearance and related background investigations for specific personnel, that could interfere with the President's constitutional authority to control the dissemination of national security information, which OPM suggests includes control over which agency conducts background investigations. *See* OPM Opinion Request at 9 n.22. We do not believe, however, that the statutory reallocation of the responsibility to conduct such background investigations infringes upon the President's constitutional role in protecting national security information.

As the Supreme Court has recognized, the President has significant independent constitutional authority in this area. The President's "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information" derives from his constitutional authority as "'Commander in Chief of the Army and Navy of the United States.'" *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (quoting U.S. Const. art. II, § 2, cl. 1). That authority thus "exists quite apart from any explicit congressional grant." *Id.* Indeed, "[t]he President's roles as Commander in Chief, head of the Executive Branch, and sole organ of the Nation in its external relations require that he have ultimate and unimpeded authority over the collection, retention and dissemination of intelligence and other national security information in the Executive Branch." *Access to Classified Information*, 20 Op. O.L.C. 402, 404 (1996) (quoting Brief for the Appellees at 42, *Am. Foreign Serv. Ass'n v. Garfinkel*, 488 U.S. 923 (1988) (No. 87-2127)). Thus, while Congress is not entirely disabled from participating in the system for protecting classified information, Congress may not impair the President's control over national security information. *See, e.g.*, *Applicability of the Foreign Intelligence Surveillance Act's Notification Provision to Security Clearance Adjudications by the Department of Justice Access Review Committee*, 35 Op. O.L.C. __, at *8 (June 3, 2011). "Congress may not, for example, provide Executive Branch employees with independent authority to countermand or evade

the President's determinations as to when it is lawful and appropriate to disclose classified information." *Id.*

But section 925 does not encroach upon presidential prerogatives with respect to the protection of classified information. Section 925 does not purport to dictate who should be granted access to national security information. Nor does section 925 attempt to alter the substantive standards governing which individuals are entitled to be granted such access. Rather, section 925 simply reallocates from OPM to DoD the authority to conduct the background investigations generating the information required to make such access determinations for a subset of federal personnel. Moreover, section 925 gives the Secretary of Defense the flexibility either to use this authority himself or to "delegate such authority to another entity," suggesting that the Executive Branch will still have ultimate control over which entity conducts these investigations. FY 2018 NDAA, § 925(a)(1), 131 Stat. at 1526. And in any event, DoD would remain subject to the framework for controlling how access determinations will be made that the President established in Executive Orders. When performing security clearance and related background investigations, DoD would, for example, remain subject to the oversight of the Director of National Intelligence. *See* Exec. Order No. 13764, § 3(s) (amending Exec. Order No. 13467, § 2.5(e)(i)–(vi), (vii)).[5] We conclude that this statutory reallocation of investigative functions from one part of the Executive Branch to another does not raise constitutional concerns.

## III.

For the reasons set forth above, we conclude that, under section 925 of the FY 2018 NDAA, DoD has the authority to conduct background investigations for its personnel that the NBIB currently performs, including investigations to determine whether those personnel may be granted a security clearance giving them access to classified information or whether they are eligible to hold a sensitive position. We do not understand this

---

[5] Indeed, the implementation plan that DoD developed pursuant to the FY 2017 NDAA, which section 925(b) directs DoD to follow, specifically includes as a criterion of the plan's "end-state success" with respect to such investigations the achievement of "[c]ompliance with [ODNI] oversight, reporting and assessment requirements." DoD Implementation Plan at 6–7.

specific grant of investigative authority to DoD otherwise to disrupt the general oversight framework for background investigations established by Executive Order 13764 and its predecessors.

SARAH M. HARRIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
